UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SAULT STE. MARIE TRIBE OF
CHIPPEWA INDIANS,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

and,

UNITED STATES DEPARTMENT OF
THE INTERIOR,

and,

DIRK KEMPTHORNE,
SECRETARY OF THE INTERIOR

and,

NATIONAL INDIAN GAMING COMMISSION,

and,

PHILIP N. HOGEN, CHAIRMAN
NATIONAL INDIAN GAMING COMMISSION,

    Defendants.

Case No. 2:06-CV-276

Hon. R. Allan Edgar
U.S. District Judge

## COMPLAINT

HONIGMAN MILLER SCHWARTZ
AND COHN LLP
John D. Pirich (P23204)
Andrea L. Hansen (P47358)
222 N. Washington Sq., Suite 400
Lansing, MI 48933
(517) 484-8282

GREENE, MEYER & McELROY, P.C.
Bruce R. Greene
Alice E. Walker
1007 Pearl Street, Suite 220
Boulder, CO 80302
(303) 442-2021

## I. INTRODUCTION

1.      Pursuant to the Administrative Procedure Act, the Sault Ste. Marie Tribe of Chippewa Indians ("Sault Tribe" or "Tribe") brings this lawsuit to challenge certain agency action and inaction. The agency action consists of a final decision by the National Indian Gaming Commission ("Commission") rejecting a request by the Tribe to amend its Tribal Gaming Ordinance in order to authorize gaming on a parcel of Indian land located in St. Ignace, Michigan. This parcel was taken into trust in 2000 for the benefit of the Tribe and its members, and is referred to throughout this complaint as the "2000 Parcel."

The Commission's denial of the Tribe's request to amend its Gaming Ordinance in order to allow gaming on the 2000 Parcel is based on two written decisions -- one from the Commission and the other from the Department of the Interior ("Department" or "Interior Department") of which the Commission is a part. The Department's opinion, dated February 14, 2006, concludes that a parcel of Indian land taken into trust in 1983 ("1983 Parcel") for the benefit of the Tribe and its members, which is immediately contiguous to the 2000 Parcel, is not a reservation within the meaning of 25 U.S.C. § 2719(a)(1). Under the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-21 ("IGRA"), if the 1983 Parcel is a reservation, gaming could occur on the 2000 Parcel as a matter of right.

The second written decision comes from the Commission, which concluded that although the Sault Tribe is a "restored tribe," the 2000 Parcel is not "restored lands," within the meaning of those terms as used in 25 U.S.C. § 2719(b)(1)(B)(iii). If the 2000 Parcel is restored land, gaming by the Tribe could occur on the 2000 Parcel as a matter of right.

The agency inaction of which the Tribe complains is the failure of the Department to act on two requests by the Sault Tribe, one in 1986 and the other in 1988, to proclaim the 1983 Parcel a reservation under 25 U.S.C. § 467.  Both requests predated the enactment of IGRA.  The Tribe's requests to the Department to proclaim the 1983 Parcel a reservation have sat with the Department (or have been lost) for 20 and 18 years, respectively.  Had the Department properly and timely proclaimed the 1983 Parcel a reservation, consistent with its statutory and fiduciary responsibilities to the Sault Tribe, gaming could occur on the 2000 Parcel as a matter of right, pursuant to 25 U.S.C. § 2719(a)(1).

If the Commission's determinations and the Department's determination and inaction are allowed to stand, the Tribe will not be allowed to operate casino-style gaming in a new replacement casino/hotel/restaurant located primarily on the 2000 Parcel, which is fully constructed and indeed opened for non-gaming business on or about June 15, 2006.  The Department's action and inaction, and the Commission's actions are arbitrary, capricious, an abuse of discretion, and otherwise contrary to applicable law as set forth in IGRA, related statutes and controlling judicial decisions.

## II. PARTIES

2.      Plaintiff Sault Tribe is a federally recognized Indian tribe organized under 25 U.S.C. § 476, with reservation lands located in Sault Ste. Marie, Michigan, and trust lands located in St. Ignace, Michigan, as well as other locations in the Upper Peninsula of the State of Michigan.

3.      Defendant United States of America has various statutory responsibilities related to the conduct of gaming on Indian lands pursuant to federal law including, but not limited to,

IGRA, and also has a fiduciary responsibility to the Sault Tribe to act in the best interests of the Sault Tribe in carrying out its other statutory obligations.

4. Defendant Dirk Kempthorne (the "Secretary") is the Secretary of the Interior Department. As Secretary, Mr. Kempthorne has a variety of statutory and trust responsibilities related to Indian tribes and over the conduct of gaming by Indian tribes on Indian lands. As Secretary, he has a fiduciary responsibility to the Sault Tribe to protect tribal trust resources, promote tribal economic development, especially where sanctioned by Congress, and to act in the best interests of the Sault Tribe in carrying out his statutory and trust responsibilities related to federal Indian gaming law and the conduct of gaming by Indian tribes.

5. Defendant Commission is an agency within the Interior Department, created when Congress enacted IGRA, 25 U.S.C. § 2704(a), and charged with the responsibility for overseeing and regulating the conduct of gaming by Indian tribes on Indian lands, pursuant to IGRA.

6. Defendant Philip N. Hogen ("Hogen") is Chairman of the Commission. As Chairman, he has a variety of statutory responsibilities over the conduct of gaming by Indian tribes on Indian lands, and has a fiduciary responsibility to the Sault Tribe to protect its interests in gaming as identified by Congress in IGRA. Further, he is required by IGRA to promote tribal economic development through the conduct of Indian gaming. He is obligated by his fiduciary duty owed to the Sault Tribe to act in the best interests of the Tribe in carrying out his statutory responsibilities related to federal Indian gaming law and the conduct of gaming by Indian tribes.

### III. JURISDICTION AND VENUE

7. This Court has federal question jurisdiction over the Tribe's claims, pursuant to 28 U.S.C. §§ 1331 and 1362, because the claims arise under 25 U.S.C. §§ 2719(a)(1) and 2719(b)(1)(B)(iii), as well as the federal law governing defendants' trust responsibilities.

8. This Court has jurisdiction over the Tribe's claims under the Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA").

9. Venue is appropriate in the District Court for the Western District of Michigan pursuant to 28 U.S.C. § 1391(e).

### IV. FACTUAL ALLEGATIONS

**The Sault Ste. Marie Tribe of Chippewa Indians and its Land Base**

10. The Sault Tribe is a federally recognized Indian tribe in the State of Michigan with approximately 33,000 enrolled members, nearly half of whom reside in various counties in Michigan's Upper Peninsula, including the counties of Chippewa, Mackinac, Schoolcraft, Alger, Marquette and Delta.

11. The second largest concentration of Sault Tribe members is located in the City of St. Ignace, Mackinac County, Michigan.

12. The Sault Tribe is one of the modern day political successors in interest to the Michigan tribes that entered into a series of treaties with the United States between 1795 and 1855. *See City of Sault Ste. Marie, Mich. v. Andrus*, 532 F. Supp. 157, 161 (D.D.C. 1980); *accord United States v. Michigan*, 471 F. Supp. 192, 218 (W.D. Mich. 1979), *remanded*, 623 F.2d 448 (6th Cir. 1980), *modified*, 653 F.2d 277 (6th Cir. 1981).

13.     Notwithstanding the Sault Tribe's extensive treaty history with the United States, federal governmental officials administratively, improperly and unlawfully, terminated the Sault Tribe's federal acknowledgment in 1937 by a memorandum from the Commissioner of Indian Affairs. Thereafter, the United States and its agency, the Department, ceased treating the Sault Tribe as federally acknowledged for a period of 35 years.

14.     On September 7, 1972, the Commissioner of Indian Affairs reversed its 1937 position and issued a memorandum acknowledging the Sault Tribe under federal law.

15.     On February 20, 1975, the Department proclaimed a 40-acre parcel of land on Sugar Island to be the Sault Tribe's initial reservation. No tribal members live on the Sugar Island proclaimed reservation. But for a small community building, used only sporadically by the Tribe and some of its members, it is open and unoccupied land.

16.     In 1981, by resolutions of the Sault Tribe's Board of Directors numbered 4-29-81-B and 12-16-81-B, the Sault Tribe requested that the United States take into trust for the Tribe's benefit the parcel of land located in St. Ignace, Michigan known as the 1983 Parcel, and on April 22, 1983, the Department accepted the 1983 Parcel into trust for the benefit of the Tribe and its members.

17.     On January 6, 1984, the Department set aside an additional 84.8 acres of land situated on Shunk Road in Sault Ste. Marie as a part of the Sault Tribe's Reservation ("Shunk Road Reservation"). The second set-aside is not contiguous to the 40-acre parcel on Sugar Island, and is located west of the Sugar Island parcel and within the city limits of the City of Sault Ste. Marie, Michigan. The Shunk Road portion of the Tribe's Reservation, unlike the

Sugar Island parcel, is used for economic development purposes, for tribal housing for tribal members and their families, and for tribal governmental services provided to tribal members.

18. On March 18, 1986, the Sault Tribe requested the Department to proclaim the 1983 Parcel a reservation for the Tribe and its members, by resolution of the Sault Tribe's Board of Directors numbered 3-18-86A. Twenty years later, the Tribe has yet to receive an answer to that request.

19. On April 19, 1988, the Sault Tribe made a second request to the Department to proclaim the 1983 Parcel a reservation for the Tribe and its members, by resolution of the Sault Tribe's Board of Directors numbered 4-19-88B. Eighteen years later, the Tribe has yet to receive an answer to that request.

20. In 1992, the Sault Tribe acquired a second parcel of land in St. Ignace, Michigan, contiguous to the 1983 Parcel, and in 1999, the Tribe requested the United States to take the second parcel into trust for the benefit of the Tribe and its members by resolution of the Sault Tribe's Board of Directors numbered 99-82. On July 19, 2000, the Department accepted the second St. Ignace parcel known as the 2000 Parcel, into trust for the benefit of the Tribe and its members.

21. Since 1972, when the Sault Tribe was administratively restored to federal acknowledgment, the Tribe has engaged in a systematic process of reacquiring lands within its former aboriginal territory which were lost during the treaty process with the United States and the settlement of Michigan by non-Indians. The Sault Tribe has reacquired approximately 1,600 acres scattered throughout the Upper Peninsula of Michigan which the Department has taken into

trust for the benefit of the Tribe and its members. Only the 1983 Parcel and the 2000 Parcel, both of which are situated in St. Ignace, are at issue in this action.

### Indian Gaming Regulatory Act and Tribal Gaming in St. Ignace

22.   On October 17, 1988, Congress enacted IGRA, which created a comprehensive federal scheme for the regulation of Indian gaming, and established the Commission as an Indian gaming regulatory agency within the Department. IGRA divides gaming into three categories, known as classes, and then assigns separate regulatory consequences to each identified class. The statute authorizes the conduct of Indian casino gaming, known as class III gaming, on Indian lands, which are defined in the statute, 25 U.S.C. § 2703(4). Generally, a tribe may conduct class III gaming on Indian lands when the tribe has adopted a tribal gaming ordinance approved by the Chairman of the Commission, the Indian lands are located in a state which permits such gaming for any purpose by any person, and the tribe has a tribal-state class III gaming compact in effect. 25 U.S.C. § 2710(d)(1).

23.   In 1993, the Sault Tribe and the State of Michigan entered into a class III gaming compact, which was approved by the Secretary of the Interior, and is presently in full force and effect . Under the Tribal-State Compact, the Tribe may play a wide variety of casino style games, including banked card games, dice games (including craps), and electronic gaming devices often referred to generically as slot machines. The Tribal-State Compact allows the Tribe to operate more than one casino, as long as those casinos are located on  lands eligible for gaming under IGRA, 25 U.S.C. §§ 2703(4), 2719(a)(1), 2719(b)(1)(B)(iii).

24. IGRA prohibits the conduct of Indian gaming on lands taken into trust after October 17, 1988, unless one of several exceptions applies. 25 U.S.C. § 2719(a). The pertinent exceptions related to this action are found in 25 U.S.C. §§ 2719(a)(1) ("contiguous lands exception") and in 2719(b)(1)(B)(iii) ("restored lands to a restored tribe exception"). The 2000 Parcel is contiguous to the 1983 Parcel. The 1983 Parcel is a "reservation," within the meaning of 25 U.S.C. § 2719(a)(1) and within the meaning of 18 U.S.C. § 1151, although the Secretary has concluded otherwise. The 2000 Parcel is "restored lands," within the meaning of 25 U.S.C. § 2719(b)(1)(B)(iii), although the Commission has concluded otherwise.

### Tribal Governmental Activities on the 1983 Parcel and the 2000 Parcel

25. The Sault Tribe uses the 1983 Parcel for multiple purposes, including for tribal member housing. Currently, 59 houses, constructed with United States Department of Housing and Urban Development ("HUD") grant money and owned by the Tribe's Indian Housing Authority, are under lease to tribal members. The Tribe also owns the Lambert Center, located on the 1983 Parcel and funded in part by the United States Indian Health Service, which houses a medical clinic, a dental clinic, the Tribe's Head Start program, offices for the provision of social services, and related governmental facilities used for the benefit of tribal members. The 1983 Parcel is also used for economic development purposes, including the Kewadin Shores Casino, which opened its doors to customers in 1986. The Tribe conducts class III gaming, as defined by IGRA and the Tribal-State Compact, in the Kewadin Shores Casino. It is this facility the Tribe has chosen to replace with the new hotel/restaurant/casino facility located almost entirely on the 2000 Parcel.

26.     The Sault Tribe uses the Shunk Road Reservation, located within the City of Sault Ste. Marie, for tribal housing, the provision of tribal governmental services to tribal members, and for economic development, which includes a convenience store/gasoline station.

27.     The 1983 Parcel and the Shunk Road Reservation are functionally equivalent with regard to their uses by the Tribe and its members. Both parcels serve as a homeland for the Tribe and its members; both parcels are used for economic development to serve Sault Tribe members; and both parcels are used to provide essential governmental services to Sault Tribe members.

28.     Despite the virtually identical uses of the 1983 Parcel and the Shunk Road Reservation, on February 14, 2006, the Department determined that the 1983 Parcel is not a reservation within the meaning of 18 U.S.C. § 1151 and, therefore, not a reservation within the meaning of 25 U.S.C. § 2719(a)(1).

29.     In 1986, the Sault Tribe constructed a casino on the 1983 Parcel in St. Ignace, and has lawfully operated that casino pursuant to IGRA and the Tribal-State Compact since that time. Since its original construction, the original casino has undergone several expansions, and now is an unaesthetic conglomeration of attached buildings.

30.     Additionally, the original tribal casino located on the 1983 Parcel suffered from various problems. First, the original tribal casino posed suspected environmental problems negatively affecting, in particular, local wetlands. Second, the original tribal casino posed suspected health problems because the air circulation was inadequate and cigarette smoke could not be properly removed from the building. Third, because the original tribal casino expanded over time, it was aesthetically problematic. These problems negatively affected the economic competitiveness of the original tribal casino.

31. The Sault Tribe determined to construct a new casino facility to replace the old casino that is located on the 1983 Parcel. The Sault Tribe began preliminary construction work (site clearing and site preparation) for the replacement casino in St. Ignace in the Fall of 2003, and construction of the structure of the facility began in the Spring of 2004. Construction is now complete; the new facility opened its hotel, restaurant, cocktail lounge and entertainment venue on or about June 15, 2006. No gaming takes place at the casino on the 2000 Parcel because of the dispute between the Tribe and the Commission and the Department, which dispute is the subject of this action.

32. The new, replacement casino is somewhat smaller than the original casino, but contains approximately the same number of gaming machines and tables as the original casino. The new facility is located almost entirely on the 2000 Parcel, and is approximately 500 linear feet from the original casino on the 1983 Parcel. Approximately five percent (5%) of the new facility's footprint is located on the 1983 Parcel.

33. Locating the replacement casino entirely on the 1983 Parcel would have conflicted with tribal housing located on that parcel and would have required the razing of a large number of those HUD-funded houses, which are otherwise perfectly functional. In order to leave those houses undisturbed, and to best utilize the site, the Sault Tribe extended the replacement casino onto the 2000 Parcel, believing that such extension was warranted and consistent with IGRA.

34. Believing that the conduct of class III gaming on the 2000 Parcel would be permissible under the Tribal-State Compact and IGRA, the Sault Tribe incurred significant debt in the construction of the new casino facility which must be serviced by revenues generated from

the operation of the replacement casino. Additionally, the Sault Tribe must operate the replacement casino in order to serve its best interests and those of its members, and to provide needed governmental services to tribal members.

35.     The replacement casino in St. Ignace will not change the number of tribal casinos or the number of gaming devices in operation in Michigan. By letter dated December 2, 2003, the Deputy Legal Counsel for the Governor of Michigan agreed that the construction of a replacement casino extending onto the 2000 Parcel was not inconsistent with IGRA and the Tribal-State Compact.

36.     The replacement casino facility opened for business at the hotel, restaurant, and cocktail lounge on or about June 15, 2006. The area in the new facility which was to be the casino floor is temporarily being used as an entertainment venue. The Tribe, at great expense and inconvenience, constructed a temporary structure immediately adjacent to the replacement casino facility. The temporary casino structure is located entirely on the 1983 Parcel, where gaming can take place as a matter of right. The temporary structure is connected to the replacement facility via an elevated walkway through which patrons pass. The temporary structure is used for the casino.

**Departmental Determination**

37.     Between July 2003 and July 2004, the Sault Tribe repeatedly notified the Department and the Commission of its intent to construct a replacement casino facility and then of its construction schedule. The Tribe repeatedly sought assurance from the Department that gaming was permissible on the 2000 Parcel, and that construction of the Tribe's new replacement casino was consistent with IGRA. During the course of the Tribe's attempts to secure the

Department's concurrence that the replacement casino was permissible under IGRA, the Tribe informed the Department that the construction was underway.

38.     It was not until July 30, 2004, that the Department, through a letter from the Commission, suggested that "the Tribe may want to forestall construction plans while the issues are more fully considered." Letter to Bruce R. Greene from Penny J. Coleman (July 30, 2004). The Commission's letter suggesting that construction be forestalled was sent well after construction was underway, and well after the Tribe had notified the Department that construction was underway.

39.     Over two and one-half years after the Tribe's initial notification to the Department that it intended to construct a replacement casino and more than two years after construction began, the Department, on February 14, 2006, rendered a decision that the 1983 Parcel is not a reservation within the meaning of 18 U.S.C. § 1151, and, therefore, was not a reservation within the meaning of 25 U.S.C. § 2719(a)(1) . Letter from Edith R. Blackwell, Acting Assoc. Solicitor, Div. of Indian Affairs, to Philip N. Hogen, Chairman, Nat'l Indian Gaming Comm'n (Feb. 14, 2006) ("February 14 Letter"). By the time the Department sent its February 14 Letter, all funds for the construction and operation of the replacement casino had been secured and were in place, and construction had entered its final phases.

40.     On May 9, 2006, the Commission issued a "Warning Notice" in which it warned the Sault Tribe against opening the replacement casino in St. Ignace in anticipation that the Commission would determine that the 2000 Parcel is not restored lands to a restored tribe within the exception to the general prohibition against gaming on after-acquired lands contained in IGRA, 25 U.S.C. § 2719(b)(1)(B)(iii). The "Warning Notice" did not provide a date or estimated

time when the Commission might render the final decision that the "Warning Notice" anticipated.

41. On September 1, 2006, the Commission issued a Final Decision and Order disapproving the Tribe's request to amend its Gaming Ordinance to specifically allow gaming to take place on the 2000 Parcel. The basis for that disapproval was that the 1983 Parcel was not a reservation within the meaning of 25 U.S.C. § 2719(a)(1), pursuant to the opinion of the Acting Associate Solicitor, Division of Indian Affairs, U.S. Department of the Interior. Also on September 1, 2006, the Commission concluded that the 2000 Parcel is not restored land, within the meaning of 25 U.S.C. § 2719(b)(1)(B)(iii), pursuant to a Memorandum from the Acting General Counsel of the Commission to the Chairman of the Commission, dated July 31, 2006.

### FIRST CLAIM FOR RELIEF

42. Paragraphs 1-41 are incorporated herein by reference.

43. The Commission's order denying the Sault Tribe's request to amend its Gaming Ordinance to specifically allow gaming to take place on the 2000 Parcel is a final agency action. Said order is premised upon two written opinions. The February 14 Letter concluded that the 1983 Parcel is not a reservation within the meaning of 18 U.S.C. § 1151 and, therefore, is not a reservation within the meaning of 25 U.S.C. § 2719(a)(1). The Department's opinion is contrary to established law regarding when trust lands qualify as a reservation under 18 U.S.C. § 1151.

44. The Department's February 14 Letter is:

    a. Arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, 5 U.S.C. § 706(2)(A);

    b.  In excess of statutory jurisdiction, authority, or limitations, and short of statutory right, 5 U.S.C. § 706(2)(C); and

    c.  Without observance of procedure required by law, 5 U.S.C. § 706(2)(D).

## SECOND CLAIM FOR RELIEF

  45.  Paragraphs 1-44 are incorporated herein by reference.

  46.  The Commission's Final Decision and Order, dated September 1, 2006, denying the Sault Tribe's request to amend its Gaming Ordinance to specifically allow gaming to take place on the 2000 Parcel is final agency action. Said order is premised upon two written opinions, the first of which is the February 14 Letter. The second opinion, issued by the Commission, concludes that although the Sault Tribe is a restored tribe, the 2000 Parcel is not restored land, within the meaning of 25 U.S.C. § 2719(b)(1)(B)(iii). The Commission's opinion is contrary to established law on the meaning of that statutory provision.

  47.  The Commission's September 1, 2006 Final Decision and Order is:

    a.  Arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, 5 U.S.C. § 706(2)(A);

    b.  In excess of statutory jurisdiction, authority, or limitations, and short of statutory right, 5 U.S.C. § 706(2)(C); and

    c.  Without observance of procedure required by law, 5 U.S.C. § 706(2)(D).

## THIRD CLAIM FOR RELIEF

  48.  Paragraphs 1-47 are incorporated herein by reference.

  49.  The Department has unlawfully and improperly failed to take action on the Sault Tribe's two requests to proclaim the 1983 Parcel a reservation, pursuant to 25 U.S.C. § 467.

Both of the Tribe's requests pre-date the enactment of IGRA. The Department's inaction and/or failure to act is agency action unlawfully withheld and unreasonably delayed. 5 U.S.C. § 706(1).

## V. PRAYER FOR RELIEF

WHEREFORE, plaintiff, the Sault Ste. Marie Tribe of Chippewa Indians, respectfully requests that the Court issue an Order:

A.  Declaring that the Department's determination in the February 14 Letter and the September 1, 2006 Final Determination and Order that the 1983 Parcel does not constitute a reservation for the Sault Tribe to be arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law; that the Department's determination is in excess of statutory jurisdiction, authority, or limitations and short of statutory right; and that the Department's decision is without observance of procedure required by law.

B.  Declaring that the Commission's determination in the July 31, 2006 memorandum and the September 1, 2006 Final Determination and Order that the 2000 Parcel is not restored lands to be arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law; that the Commission's determination is in excess of statutory jurisdiction, authority, or limitations and short of statutory right; and that the Commission's determination is without observance of procedure required by law.

C.  Remanding this matter to the Department and the Commission for their reconsideration of the February 14, 2006 opinion and the July 31, 2006 opinion, respectively, in light of this Court's opinion.

D. Declaring that the Department's failure to timely respond to the Sault Tribe's request to proclaim the 1983 Parcel a reservation, pursuant to 25 U.S.C. § 467, is an agency action wrongfully withheld and unreasonably delayed.

E. Remanding this matter to the Department of the Interior compelling it to respond to the Tribe's requests, both of which pre-date the enactment of IGRA, to proclaim the 1983 Parcel a reservation, effective as of April, 1988, pursuant to 25 U.S.C. § 467.

F. Awarding to the Sault Tribe attorneys fees, expenses and costs in accordance with 28 U.S.C. § 2412(a)(1), (b).

G. Providing such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP
John D. Pirich (P23204)
Andrea L. Hansen (P47358)
222 N. Washington Sq., Suite 400
Lansing, MI 48933
(517) 484-8282

GREENE, MEYER & McELROY, P.C.
Bruce R. Greene
Alice E. Walker
1007 Pearl Street, Suite 220
Boulder, CO 80302
(303) 442-2021

By: _____
John D. Pirich (P23204)

Dated: November 8, 2006